SUSAN PETTINGILL, appellant, *vs.* HOWARD PETTINGILL.

*Probate appeal upon an account.   Practice.*

An executor's account rendered in the probate court for settlement is in the
   nature of a declaration in a writ; and unless amended by order of court, a
   greater sum than is charged cannot be allowed to the executor either in that
   court or upon appeal.

Where one of several obligors in a bond, each being bound for himself alone,
   overpays the amount due from him, such payment being made upon his lia-
   bility alone, it does not enure to the benefit of either of the others.

ON REPORT.

This was a second hearing upon the appeal taken by Susan Pet-
tingill, widow and devisee of the late Benjamin Pettingill, from
the decree of the judge of probate of Kennebec county, allowing
the account of Howard Pettingill, as executor of the will of his
father, also named Howard Pettingill, deceased March 28, 1840.
The reasons for the appeal, and the relations of the parties can be
ascertained by reference to the report of the case *Pettingill*, ap-
pellant, v. *Pettingill*, 60 Maine, 411.   By the terms of the will
of which the appellee is executor the five children of the decedent
by his wife, Amy Pettingill, were required to and did give bond
for the support of their mother during her life, the expense to be
borne equally according to the condition of the bond, though not
precisely so expressed in the will, by the terms of which the lands
devised to the testator's children were charged with the perform-

ance of the stipulations of the bond, which was not in fact executed till two months after the death of the father. See 60 Maine, 411, and *Pettingill* v. *Patterson*, executor, 32 Maine, 569.

The executor's account as originally filed, was "for the maintenance of Amy Pettingill, widow of Howard Pettingill, deceased," viz :—

| | |
|---|---:|
| From March 28, 1840, to March 28, 1861, at $110. per year, | $2,310 |
| To interest on twenty instalments, | 2,706 |
| To continuing maintenance from March 28, 1861, to March 28, 1871, at $220 per year, | 2,200 |
| To interest on nine instalments, | 594 |
| | $7,810 |
| Less one-fifth, [the executor's one proportion, he being a son,] | 1,562 |
| Balance, | $6,248 |

The judge of probate allowed this account, exclusive of interest, as is stated in 60 Maine, 414; but the supreme court of probate directed its allowance for the six years next preceding the filing of the account, and that credit should be given the several devisees for the sums paid by each for the mother's maintenance and for such sum (if any) as she earned by her labor in the accountant's family. 60 Maine, 424 and 425.

To ascertain these items, the cause was sent by the judge at *nisi prius* to an auditor, (Hon. James W. Bradbury,) who made this report at the March term, 1875:

"After a protracted hearing of the parties, their evidence and the arguments of their counsel, and a careful consideration of the same. I have come to the following conclusion, viz:—

| | |
|---|---:|
| That for a period of six years from November 20, 1852, to November 20, 1858, a fair and just compensation for the support and maintenance of Mrs. Amy Pettingill, according to the bond, was $110 per year, making for the six years, | $660.00 |
| And for the period of six years from November 20, 1858, to November 20, 1864, $3.50 per week, or $182 per year making for the six years, | 1,092.00 |
| And for the period from November 20, 1864, to March 28, 1871, $6.50 per week, or $338 per year, making for the period of six years, eighteen weeks, | 2,145.00 |
| | $3,897.00 |

| | |
|---|---:|
| To which amount I add interest upon the six annual instalments next before filing the account, | 304.00 |
| | $4,201.00 |
| Interest from the filing the account March 28, 1871, to March 28, 1875, is added, | 1,008.00 |
| Making, | $5,209.00 |
| Of this one-fifth is to be borne by the executor, | 1,041.80 |
| | $4,168.20 |

And said Howard Pettingill is not in my judgment entitled upon the evidence to recover anything on this account for the maintenance of his mother prior to November 20, 1852. At that time, in a settlement of certain matters made between him and Benjamin, it was the understanding of both that all past liability of every kind from Benjamin to Howard was cancelled.

All the other parties liable for the support of the old lady having settled, I find that said Howard is not entitled to recover anything in this account for charges prior to November 20, 1852.

Mrs. Mary A. Kent, an obligor in the bond, testified to her care of the mother and attendance upon her since the fall of 1864; and that she has in addition, paid Howard $1200 on account of her liability to bear her fifth part of the expense incurred under the bond. This, in my judgment, is sufficient and more than sufficient to discharge her appropriate share of the liability.

But I have not felt at liberty to deduct the excess so as to reduce the amount due from Benjamin. All the other obligors have respectively discharged their share of the obligation under the bond, either by settlement or adequate service.

The services of the mother were of value to Howard prior to his marriage in the fall of 1848. Since her illness in 1858, her kindly efforts at labor have been of no substantial value.

I find, in conclusion, that there is due to Howard Pettingill from the estate of said Benjamin chargeable upon the land decreed to him by his father, including interest upon the last annual instalments up to March 28, 1875, the sum of ($1,041.80) ten hundred forty-one dollars eighty cents.

Exception was taken by the counsel for the appellant to my al-

lowance of a larger amount per annum for the maintenance of the mother than that charged in the original account filed in the probate office, and by the counsel of the appellee to my allowance of any payment to Howard in the transactions of November 20, 1852, as not being embraced in the 'reasons of appeal.'

J. W. BRADBURY."

The said Susan Pettingill, appellant, filed the following objections to the acceptance of the foregoing report of the commissioner in this case.

I. The executor claimed but two hundred and twenty dollars per year and interest thereon as appears in report of the case, from March 28, 1861, to March 28, 1871, in his account filed in the probate court, but the commissioner in his report allows him from November 20, 1864, to March 28, 1871, $6.50 per week, or $338 per year, and interest upon the last six instalments. His allowance of more than that claimed by the executor in his account and interest upon the same was unauthorized.

II. The commissioner finds that Mrs. Mary A. Kent, one of the obligors in the bond, paid more than her one-fifth for the support of Amy Pettingill to Howard Pettingill, the executor, but does not deduct the amount so overpaid from the executor's claim, but allows his claim for the same amount as if he had not received such over payment. The amount so over-paid by Mary A. Kent should have been deducted from the executor's claim.

The facts set forth in the report of this case in the sixtieth volume of Maine reports, page 411, were made a part of the case.

The presiding judge, *pro forma*, accepted the report and awarded costs to the appellee, to which acceptance and award of costs the appellant excepted.

*E. F. Pillsbury* for the appellant.

The commissioner allows $72 a year from November 20, 1858, to November 20, 1864, six years,—$432—more than was charged in the executor's account originally filed in the case. 60 Maine, 414.

Also $118 a year from November 20, 1864, to March 28, 1871, six years and eighteen weeks, more than was charged in the account; amounting to about $750, and interest upon this over-allowance for six years to the time of filing the account, March 28, 1871, equals $270. These over-allowances and interest on the same to March 28, 1871, equals $1450. Then he allows interest upon this over-allowance from the time of filing the account March 28, 1871, to March 28, 1875, four years, being about $350 more, making in all an over-allowance of about $1800, one-fifth of this is $360, allowed against the widow of Benjamin Pettingill more than charged in the executor's account.

It may be claimed that the amount allowed does not exceed the amount charged including interest, but the greater part of the over-allowance is upon that part of the account on which interest is allowed. The charge in the account is $220 per year with interest, and the allowance is $338 per year with interest.

If it is claimed that this extra allowance may stand because the whole amount allowed on all the items does not exceed the whole amount charged in all the items, including interest, the answer is that the court has expressly found that interest shall be allowed only on the last six instalments. 60 Maine, 425.

What propriety in cutting off the interest prior to the six years if the other items are to be increased to offset the interest cut off?

Can $338 and interest be allowed on a charge of $220 a year and interest?

Suppose this question of fact as to the worth of supporting the old lady had been submitted to a jury, as it might have been under R. S., c. 63, § 26, could the jury in that case, render a verdict for more than was charged in the account as first filed? No more than they could upon an account in a writ.

The amount overpaid by Mary A. Hunt, to·the executor should have been deducted from his claim against the estate for supporting the old lady. The over-payment by Mrs. Kent may be and is in fact barred from being recovered back by her and in so far

as she has over-paid Howard will be twice paid if he can recover it again in this manner.

Suppose the other three obligors had supported their mother entirely. Could the executor compel Benjamin's estate to pay one-fifth of it to him? If one has contributed more than her share is it to be paid to Howard again?

The court say in this case, the acountant should charge himself with all that either of the legatees has paid, as well as his own fifth. 60 Maine, 424. This report only charges him with a part of what Mrs. Kent paid and leaves him to be paid twice.

If the account as originally filed was based on a judgment in the case of *Pettingill* v. *Patterson*, 32 Maine, 569, as claimed by appellee's attorney, it is an additional reason why it should not be increased.

*S. Lancaster* for the appellee.

In the original bill filed in the probate court, Howard Pettingill as executor, claimed to be allowed what the judgment in *Pettingill* v. *Patterson*, 32 Maine, 569, would give him, and made his bill for the first twenty years, upon the basis of that judgment; then for the next ten years, the yearly sum was doubled, to meet the increased cost of living, but interest was claimed and reckoned on the yearly instalments, in accordance with the judgment in that case, and just as much claimed as the yearly instalments themselves.

See the bill in 60 Maine, 414.

| | |
|---|---:|
| One-fifth part of it is | $1,562.00 |
| Interest from March 28, 1871, to March 28, 1875, | 374.88 |
| Amounting March 28, 1875, to | $1,936.88 |

But the court in their decision in this case, reported in 60 Maine, 411, not having adopted the judgment in the case first cited as the method of making up the executor's account, and having decided, that he was "to be allowed the cost of maintenance," at the hearing before Mr. Bradbury, the executor was called upon by Mr. Bradbury, to make up his account according to the above directions, and he made it up as follows:

Pettingill *v.* Pettingill.

| | |
|---|---|
| From March 28, 1840, to March 28, 1848, 416 weeks at $3 per week, | $1,248.00 |
| From March 28, 1848, to March 28, 1857, 468 weeks at $5 per week, | 2,340.00 |
| From March 28, 1857, to March 28, 1871, 728 weeks at $8 per week, | 5,824.00 |
| Interest on six last annual instalments, | 519,30 |
| Amounting to | $9,931.30 |
| One-fifth of which, being Benjamin's part is | $1,986.20 |

It is true that Mr. Bradbury divided the whole time into periods as the case seemed to require, and allowed according to the circumstances of each particular period, up to 1848 allowing nothing, and without saying what he allowed from 1848 to November 20, 1852, considering everything up to that time, embraced in a private settlement, then made, between Howard and Benjamin, after that allowing according to the circumstances of the case, amounting in the aggregate to the said sum of $1,041.80.

Now the executor says that the appellant is not aggrieved at this, but that he is the aggrieved party, because Mr. Bradbury allowed the appellant to go outside of the reasons of appeal, and offer proof of claims never thought of while Benjamin lived, nor at the time the reasons of appeal were made and filed. This the executor considers entirely illegal, and that whatever was allowed by Mr. Bradbury for the use of the place and for twelve acres of land, was wholly outside of the case and unauthorized, but having consented that Mr. Bradbury might make up the account he proposes to abide by Mr. Bradbury's decision.

Upon the whole the case stands thus, Mr. Bradbury has apportioned the sum he allowed, to the different periods, in a manner different from what the executor claimed, in some allowing nothing, in others more, but not so much as was charged on the bill used at the trial, nor in the aggregate, so much as the original account, by some eight or nine hundred dollars.

DANFORTH, J.   The questions involved in this case grow out of an account presented by the appellee, in the probate court, in which he claims a certain amount alleged to have been expended for the support of his testator's widow. The case has once been before the law court and is reported in 60 Maine, 411. It was

then held that he was entitled to render such an account, and upon subsequent proceedings an auditor was appointed to ascertain and report the amount to be allowed.

That report and objections in writing to its acceptance have been filed. These objections present the only questions now before the court.

The first objection is, that the auditor has allowed more than was claimed in the original account. The truth of this is denied, and whether true or not depends upon the validity of several propositions contended for by counsel. The original account, as filed, is in the aggregate larger than the amount allowed. But that account is made up largely, of interest, portions of which have already been held not allowable and are therefore to be stricken from the account, and can no longer be considered a part of it. Nor, under any circumstances, can we hold the interest to be a part of the debt; it is rather an incident to it. It certainly is no part of the expense of supporting the widow and must be left out in considering the question now before us.

Again it is contended that the auditor reduced the account by the allowance of payments which were unauthorized by the reasons of appeal, and but for this reduction the account would still in the aggregate be larger than the amount reported. It is true that the auditor disallowed all the account prior to a certain date, and on the ground that up to that time it had been paid and settled by the parties. This was fully authorized by the sixth reason of appeal and by the directions of the court as to the manner in which the account is to be made up, as appears by the report of the case in 60 Maine, on page 424.

Besides, this disallowance reduces the report and the account in the same proportion and can therefore have no bearing upon this question.

It is further claimed that a new and amended account, one made up in accordance with the decision of the law court, was presented to the auditor and acted upon by him without objection. That such an account was made up and acted upon may be true.

But it nowhere appears in the case that it was done by the authority of any court; nor does it appear that it was acted upon without objection, but the contrary ; for the auditor's report shows that exception was taken to his allowance of a larger amount "than that charged in the original account." It would undoubtedly be competent for the court at the proper time and place, and upon proper terms, on motion being made therefor, to allow such amendments as may be necessary to correct mistakes and supply omissions; but until such an amendment is made, we must take it as originally filed. It may be true that the new one was made in accordance with the decision of the court and so was the original one, except the interest, and the court did not and had no occasion to consider whether a new account should be filed, or the old one amended. The instructions given as to the manner of making up the account, related to the items of the old one which were to be allowed, and to that alone.

It may be proper to remark that we do not deem it material that the auditor divided the time covered into periods shorter than those in the original account. As originally rendered, the account, aside from the interest, consisted substantially of one item, a claim for the support of the testator's widow. For different periods, different prices are charged. In the auditor's report the periods are made shorter, and in one instance a sum less than that charged is allowed, while in others the sum allowed is greater than that charged. It is very obvious that for a long period a certain sum per week might properly be allowed, which might be too large for a portion of that period and too small for another portion.

The real question then, is, whether the auditor has, in the aggregate, allowed for the widow's support during the time covered by the executor's claim, more than is charged in the original account. He so reports, and on examination, in the light of the principles already discussed, we so find.

This we deem inadmissible. The account filed is in the nature of a declaration in a writ. It is a statement of the claim set up and the grounds upon which it rests. The opposing party has no-

tice of that claim and nothing beyond. In any proceeding at law or in equity, it would be somewhat of a novelty to allow a party to set up one claim and prove another, especially a larger one. He may indeed, in some instances, prove a smaller. But this is allowable only when the larger includes the smaller, and upon that ground. But the larger can never be included in the smaller. Stephen, in his work on Pleading, page 300, says "that a verdict cannot in general be obtained for a larger quantity or value than is alleged." Sedgwick on Damages, page 681, lays down the same rule saying: "it is adhered to with severity."

Upon this point, therefore, the exceptions must be sustained, and the report recommitted unless the excess in the amount allowed be remitted.

The other objection relied upon we think has no legal foundation. It alleges, and the auditor finds, that Mrs. Kent, one of the obligors in the bond given for the support of the widow, has paid more than her share toward such support, which excess is not deducted from the executor's claim in this case. The bond referred to is a several one holding each signer responsible for his share of the expense incurred for the widow's support. It was so held in the former decision of this case. The payments are to be credited to such of the legatees as make them for the purpose of "relieving his or her share of the estate." Accordingly, the auditor finds that the amount paid by Mrs. Kent was paid on her own share, and not for the benefit of this contestant. If, therefore, she has overpaid it is a matter to be settled between her and the executor, and not one which either of the other parties can legally inquire into. *Exceptions sustained.*

APPLETON, C. J., WALTON, DICKERSON and BARROWS, JJ., concurred.